Case number 156410, State Farm Mutual Auto Insurance Company et al. v. Norcold, Inc. Argument not to exceed 15 minutes per side. Mr. Schaffer, you may proceed for the appellant. Thank you. May it please the Court and Mr. Dunn. I'm David Schaffer. I represent the appellant Norcold. The primary issue in this case, and we would say the dispositive issue in this case, is whether the Kentucky Supreme Court would apply the economic loss rule to consumer products in addition to commercial products. And, of course, we say yes it would and that the District Court erred in ruling to the contrary. In our view, the economic loss rule applies to this case for three principal reasons. First of all, footnote 5 in the Giddings and Lewis case gives us a very strong intention of how the Kentucky Supreme Court would view this issue if it were to come before the Court. Mr. Schaffer, this is Judge Stranch. In looking at Giddings and Lewis, it seems to me that the Supreme Court consistently used language in the body of the opinion that limited this rule to commercial transactions. So why shouldn't that carry more weight than a reference to the restatement in a footnote that explicitly refuses to consider the effect of the economic loss rule on consumer transactions? Well, the origins, Your Honor, of the economic loss rule are in commercial products, but the rule has expanded such that now a majority of the jurisdictions apply it to both commercial and consumer products. And the fact of the matter is, Giddings and Lewis was a case that dealt with a commercial product. There was no reason for the Court to decide whether the economic loss rule applied to consumer cases. And I would give the Kentucky Supreme Court credit for very carefully saying and delineating what its holding was in Giddings and Lewis, that it applied to commercial cases. But at the same time, they didn't have to drop footnote 5 in there. But they did for a reason, and I think the reason is clear, that if the Kentucky Supreme Court were to consider the issue, that you have to look at the restatement and see that there is no distinction between commercial products and consumer products. In other words, a product is a product under the restatement. In our view, Giddings and Lewis, while the footnote is dicta, of course, that is the best evidence of where the Court would go in a case like this, for the reasons that I'll get to. Does it make a difference to your argument that Kentucky itself was late to the game, so to speak, in even adopting the economic loss rule? No, I don't think so, Your Honor. We do now have the advantage of a lot of authorities from a lot of different states that we've provided citation to from the, what was it called, Frummer and Friedman treatise that this Court cited to in the Hoover Universal case. We've now seen that most jurisdictions do apply the rule in both types of cases, and we see through repeated decisions of our Supreme Court in Kentucky that it tends to follow the majority of jurisdictions on an issue like this. Giddings and Lewis, for example, was a straight down the middle, follow the majority kind of ruling. They followed the majority rule on applying the rule, on determining there's no calamitous event exception, and in defining the product for purposes of the rule. And in addition to that, we see consistently and recently that the Kentucky Supreme Court does tend to follow the restatement, particularly the restatement of torts, in terms of product liability cases. The principal sections of which that are applicable here are Section 402A, which the Falcon Coal Court utilized back in its decision earlier, and also Section 19A of the Restatement Third of Torts Product Liability, which was specifically referred to in this footnote. But an important point I do want to get to is that the real estate marketing versus Franz case has been completely discredited and disavowed insofar as the economic loss rule is concerned. Why is that important? It's important because it was the Franz case that this court utilized back in 2002 in the Hoover Universal opinion 14 years ago for its what I'll call an eerie guess, indicta that the Kentucky Supreme Court probably would not apply the economic loss rule in consumer cases. I think with the passage of time and the issuance of the Giddings and Lewis opinion, we see that the court in Hoover Universal simply read too much into Franz, and Franz has no precedential value here. I mean, just to be specific, here's what the Giddings and Lewis case said about Franz. That is, the economic loss rule was really never implicated in the Franz case. The phrase was never used. The doctrine was never implicated. The pertinent language in Franz, as the court noted in Giddings and Lewis, in fact, may well be dicta, was not altogether clear and was cryptic. And the coup de grace is that the pertinent language from Franz was specifically overruled in Giddings and Lewis to the extent it could be read to suggest that Kentucky law recognizes a calamitous event exception to the economic loss rule. So what we see is that Franz ought to be just completely wiped away from the equation here. If we wipe Franz away from the equation, the dicta in Mount Lebanon or Hoover Universal goes away, and we're left with Giddings and Lewis, and the dicta that we feel is highly suggestive in Giddings and Lewis, put note number five, and we would also... Judge Strach again, I'm struggling with the policy arguments because it seems to me that Giddings and Lewis makes a fairly strong explanation and argument based on the policies underlying the economic loss rule in commercial transactions, allocating risk by contract, finding the best party to know that risk. But isn't that a very different factual context in a consumer transaction, where the truth is that consumers are generally not as well informed about the products as are the manufacturers of them, nor are consumers rarely, or they are rarely in the position of being able to negotiate a contract. So why wouldn't the policies underlying the rule itself show the distinction here? Well, that's a good question, Your Honor, and as we point out in our brief, we believe the policies do apply equally well, and many cases from across the country have said so. The State Farm versus Ford Motor Company case from Wisconsin, which we cite in our brief, goes on in great detail to discuss why those policies are the same. I mean, first of all, Giddings and Lewis emphasize the historical distinction between tort and contract law. That is an important distinction, and it's part of the public policy of Kentucky. Otherwise, contract law just drowns in a sea of tort, to paraphrase the United States Supreme Court. And also I think the policies recognized in Giddings and Lewis recognize that a manufacturer like Norcold has a right to provide a warranty pursuant to the principles under and the limitations allowed by the Uniform Commercial Code. And in that regard, the Hoover Universal case actually speaks to this, and it specifically holds that under applying Kentucky law, as it did, that application of the economic loss rule does not require privity. It does not require equal bargaining power, and it does not require that the plaintiff ever had an opportunity to obtain a warranty. That's a holding from the Hoover Universal case that's completely consistent with Giddings and Lewis and these policies. And, of course, I have to point out the third policy that's often articulated is the fact that the purchaser always has the right to allocate risk, if not by contract, by obtaining insurance, which is exactly what happened here. But isn't that part of the issue that distinguishes these factual contexts? I know you gave several examples in your briefing of the right to contract. That was one of the arguments. And I'm just not quite hearing an answer to the real distinction between two sophisticated commercial entities who can, in fact, divide risk among themselves and allocate it versus Joe Blow, who goes out to Best Buy and wants to buy a telephone or a space heater and has no negotiable power at all. You know, you want the telephone? It's an adhesion contract. You take all of their rules and all of their agreement. I'm not hearing... Mr. Schaefer, your time is up. I want you to answer Judge Strange's question. I just wanted you to be aware that when that answer's done, unless somebody has another question for you, your time is up. Yes, thank you, Your Honor. I'll answer the question. Norcold did give a warranty in this case as the product manufacturer. It was a three-year warranty. And our view is that application of the economic loss rule simply should not depend on whether an incident like this occurred during the warranty period or serendipitously after the warranty period. If this incident had occurred during the warranty period, none of us would be here because there would be a contract remedy, a warranty remedy, unlike the situation we have here where the fact of the matter is a used product was purchased after the warranty had expired. I think that's the best way to understand it. If we start drawing distinctions, contract law truly does drown in a sea of tort. There has to be a distinction. Okay. Are there further questions? No, thank you. All right. Well, you'll have your rebuttal time, Mr. Schaefer. Thank you. Mr. Kyle, Mr. Dunn, excuse me. That's okay. Thank you. May it please the Court and Mr. Schaefer, my name is Kenneth Dunn. I represent State Farm in this matter. As everyone's aware, State Farm received a judgment at the trial level against Norcold as a result of the fire which occurred back in 2013. I think I would like to start by noting that there are what I consider to be at least two very unusual circumstances in this case. In State Farm's complaint, it was alleged that there were two separate factual circumstances that give rise to liability. The first of those was, of course, the manufacture and sale of the refrigerator. That was in 2007, and that was, of course, the product's liability action that we alleged against Norcold. The second was the circumstance whereby Norcold, after pressure I suppose from the federal authorities, entered into a recall arrangement. And in 2011, arranged for service or repair work to be done on this refrigerator. The second aspect, which I will jump to very quickly, which I think is unusual, is that in this particular litigation, after the lower court held that the economic loss rule did not apply in total because it was a consumer transaction, that Norcold decided to file what it's referred to as an admission of liability, except for the application of the economic loss rule. I have not personally seen that. I think it's much more than just a judicial admission because it by its terms has to admit all of the facts as well as the causes of action that give rise to liability in this case. Based upon the allegations in the complaint and, of course, the admission of liability from Norcold, the court subsequently decided that even if the economic loss rule would apply to this transaction, in other words, to a consumer transaction, that it would not apply to the liability created by Norcold's recall activity, which occurred four and a half years after they made this refrigerator. As a result of all that, State Farm was awarded a judgment against Norcold. I want to point out clearly that the basis or foundation for the validity of that judgment is both factual circumstances. They are connected because they involve a refrigerator made by Norcold, but they are separate types of causes of action, separate theories, and as the lower court ruled, we're entitled to judgment, State Farm was, on either cause of action. The one thing I haven't heard at all so far, and where I am going to start on behalf of my client, State Farm, is that I believe this case can be entirely resolved on the basis of the recall activity. The primary reason is that Norcold has now acknowledged in its brief that the economic loss rule does not apply to service or repair activity in the state of Kentucky. In our complaint, paragraphs 20 through 22, it was specifically alleged that Norcold engaged or performed certain repair or service activity associated with this recall. Trial court ended up deciding that regardless of the ruling concerning whether this was a consumer transaction and whether it applied there, that this was a negligence-based repair allegation, and that based upon the admission of liability, State Farm was entitled to judgment. It's our position that that is a dispositive of this case right there. Norcold has admitted the allegations with its admission of liability. Kentucky product liability laws, which we cited in our brief. Counselor, this is Judge Stranch. Your opposing counsel's brief clearly opposes that argument, noting that it was simply a stipulation that it would be liable for all property damage caused by the subject fire if the economic rule does not apply. It's not a whole-cloth admission of liability. How do you respond to that? I think his argument is incorrect. It was talked about in our brief that the whole concept of an admission is usually thought of in terms of a judicial admission. Of course, that's an evidentiary matter, and here we have a situation that the admission of liability that was drafted and filed solely by Norcold, with no involvement from State Farm, they have admitted that they would be liable for the property damage except for that one defense. That means that they have, by that admission of liability, it has to follow, then, that all factual matters have been resolved against them and in our favor. It has to do with all causes of action that we have alleged, all the elements of those are proven, and the only defense that was preserved was the economic loss rule. Judge Stranch, can I ask you a question? I'm sorry. What is your best case for drawing that conclusion, that it means that they admit all allegations of the claim as stated and that they performed the recall? What is your authority for saying that an admission such as this one counts as a complete waiver of any defenses to the allegations of the complaint? In my 30 years of practice, I have never had this situation in a piece of litigation before. By admitting that they would be liable for the property damages except for the one defense, it has to then mean that everything else has stand admitted. Now, if we want to start getting into facts, which I don't think we should do at this stage, in the record are Norcold's own product recall documents where they refer to the activities of the recall as being a service or repair. I do not believe that even common sense would dictate that something that is arranged four and a half years after the product is made has to be regarded as some kind of a repair or service activity. Judge Bertelsman clearly found that that was the case. He had no problem at all in determining this was a negligent repair claim as concerns at least the recall activities. I would again point out that this is only one of the two factual circumstances that the judgment we have against Norcold rests. On the effect of what I believe to be the recall and the repair activity being sufficient to support the judgment, I don't believe even requires this court to go to the issue of whether or not Kentucky would apply the economic loss rule in consumer transaction cases. Obviously, it's there and I will address that, but I believe... How do you respond to the argument that the parties stipulated that Norcold directed the owner of the refrigerator to take it to an authorized service center for repairs and that those repairs were performed by a third party, the spindrift? Why wouldn't that be a judicial admission that would require you to bring a claim for negligent repairs against spindrift and not against Norcold? In the first place, Your Honor, the stipulations that were entered into were for purposes of the summary judgment motion only. The admission of liability was what then triggered the trial court to go ahead and enter judgment because all elements of the claim had been admitted. But as to the actual specifics of the repair activity, the recall activity, Norcold was responsible for all of those activities except, as I phrased it in my brief, except for actually taking out the drill, drilling a hole, putting in the parts, and that was done by a third party. That, of course, they paid for. Other than that, they dictated exactly the kind of repair activity, how it should be done, under what terms it should be done, and ultimately, of course, they paid for it to be done. And as we all know, a corporation has to act through someone else. We never alleged that the actual repair itself was performed negligently. What we did allege was that they were negligent in the type of recall repair that they arranged. They did not fix anything. They merely put a high-temperature sensor in the refrigerator with the hope that when it started getting too hot, it would stop it from causing a fire. And it didn't do that in this case. I would at least skip to the second portion of the matter, and that would be whether Kentucky would apply the economic loss rule to consumer sales or consumer transactions. It seems to me that the decision entered by Judge Bertelsman just less than a year ago, which has now been published, lays out specifically why Kentucky would not do that and would not apply it to the consumer sales. He goes through a very good analysis of the three reasons, all on the policies that dictate that Kentucky would not do it. We have a series of cases, starting even before Franz, but with Franz. And while Franz can be picked apart and discussed, the end result of Franz was that in a consumer situation, the consumer was entitled to recover his economic loss. The words were not used, the economic loss rule words were not used, but that was the end result. And so what happened was, in the Mount Lebanon case in this court, 14 years ago, this court predicted that Kentucky would not utilize the economic loss rule in consumer cases. And, in fact, that was a correct prediction, because the Giddings v. Lewis, it's clear they did not do that. I believe it is true. What do you make of footnote 5, Mr. Don? I view footnote 5 as more aspirational in nature. Clearly, with the advent of restatement towards three, and specifically the sections involving product liability, there is a definition of what is a product. That was included there by the author of that decision. I think it's fair to state, being a judicial doctrine, if there were a majority of the members of the Kentucky Supreme Court who were in favor of adopting the economic loss rule for all situations, it would have been done in Giddings v. Lewis. Well, then it would have been dicted, because the facts of Giddings v. Lewis was up on a commercial transact. Well, then... ...giving advisory opinions on facts that are not before them. It has happened before with the Supreme Court's entering decisions of that nature, and I don't think there would have been any problem at all if they would have wanted to do that. The bottom line, I still believe that this is the consumer in the state of Kentucky. None of these policy provisions, these policies which are typically cited to in support of the economic loss rule, all of which did arise out of commercial cases, none of them are really furthered or applied in consumer situations involving the state of Kentucky. And under the circumstances, there's no need to revisit what Judge Bertelsmann has just written last year and published. It clearly outlines what the law should be here in Kentucky, and it is our position that that is what the law should be in Kentucky. Let me ask you that. Go ahead. Go ahead, Judge Gilman. I'm wondering, you know, it sort of strikes me this is a strange case because the two parties are both commercial. It's State Farm and it's Norco, the consumer here protecting himself with insurance, and State Farm collected premiums. Now it wants to get reimbursed for the compensated risk it took. So it sounds to me like maybe it's State Farm trying to have its cake and eat it, too. I mean, why isn't this case more like a commercial transaction? It's not a commercial transaction only because the liability, the right of State Farm to proceed is purely derivative of the insured. If you refer back into the earlier portions of the pleadings, the insured was also a party, and I suppose to get him out of the case and make it more maybe so that a question like you just asked would be asked, they went ahead and paid him his claim. State Farm, again, the whole concept, we believe, of the economic loss rule has to be that there has to be some kind of arm's length contract negotiation about all the duties and responsibilities between two commercial entities. Obviously, no one had that. State Farm's insured did not have that in this case. Obviously, State Farm did not as well. None of those policies have been set up. Your time is up, Mr. Dunn, but I think that Judge Strange has a question. Well, I just had one quick question. In light of all the moving pieces in this case and in the economic loss doctrine, why wouldn't this be a case that we should send to the Kentucky courts and let them tell you what Kentucky law means? In terms of referring it to the Kentucky Supreme Court, which motion has been made by Norcold, I guess the main point I would make is that Norcold has now placed itself in this position. It could have asked that the matter be referred to the Kentucky Supreme Court before any activity was done. It did not do so. It made a motion for summary judgment. The case law is clear, which I have placed in my response to that motion, starting with Pennington v. State Farm and also State Auto v. Hargis. Not only are motions to transfer generally not granted, but once there has been a decision by the federal court, there's a presumption that it should not be transferred. I did cite a very recent interim decision arising out of the Eastern District of Kentucky where they used the sort of down-home language that someone should not be entitled to two bites from the same apple. Norcold made its choice as to how it wanted this matter decided. There's concurrent jurisdiction between the state and the federal court, as we all know. A referral of this matter to the Kentucky Supreme Court would basically be against all precedent. It would essentially make a mockery of any concept of concurrent jurisdiction as far as we see it. All right. Your time is up. Mr. Shaffer? Yes, Your Honor. Thank you. In the time I have available, I'll go back to the beginning of Mr. Dunn's argument. We admitted liability so that this matter could be decided on summary judgment based upon the agreed statement of facts and the stipulations of record, all of which the court has in front of it. We never admitted negligence. We never admitted a defective design. We never admitted that our recall program was negligently conducted, and we specifically said in our admission that we admit nothing more than what we say. We just admitted that we lose if the economic loss rule doesn't apply. With respect to the recall program, the recall-related claim itself, it's actually quite simple. That is a tort claim against a manufacturer. That's exactly the kind of claim that the economic loss rule covers, and if the economic loss rule applies to consumer cases, this entire case is barred. Everything Norcold did in this case, or with respect to this product, it did as the product manufacturer. It issued a recall. That's what manufacturers do. The claim here is what we call a post-sale negligence claim. It's a tort claim. There's no functional difference to a time-of-sale claim, i.e., a defective design claim. It's a tort claim, and we're not a service provider. There's no question that the economic loss rule does not apply to service providers, but that misses the point because we're not a service provider. We're a manufacturer who manufactured and sold a product, and when circumstances dictated we do so, we issued a recall. The service work was performed by a third party down in Florida. We are not a service provider. The recall-related claim, as it turns out, does not get around the economic loss rule at all. Either way, these are tort claims, negligence claims, against the product manufacturer and the economic loss rule applies. We believe Judge Erdelsman erred by characterizing the recall claim as a service claim. We're not a service provider. We did not perform the service, and for that reason, that's really a red herring argument, and we believe that in all respects the judgment of the district court should be reversed. What about Mr. Gimes' two bites at the apple thought, that since you didn't ask for certification of the Kentucky Supreme Court initially, you shouldn't be able to do so now? We believe that this court always has the authority to certify an appropriate and significant question of law to the Kentucky Supreme Court, and if the Kentucky Supreme Court wishes to be the one to decide it, it should be allowed to consider that fact. We believe that our motion to certify in this court was timely, and it should be considered on the merits, and if this court decides to certify the question, we would be happy to have it decided by the Supreme Court. All right. We appreciate the argument that both of you have given, and we'll consider the case carefully. All right. Thank you very much. Thank you. Gentlemen, you may hang up at this time.